IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MICHAEL A. DUNCAN,
ADC # 111386                                                                                          PLAINTIFF

V.                             CASE NO. 5:17-CV-251-DPM-BD

WENDY KELLEY,[1] *et al*.                                                                  DEFENDANTS

### RECOMMENDED DISPOSITION

I.  **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr. Any party to this suit may file written objections with the Clerk of Court. Objections should be specific and should include the factual or legal basis for the objection. To be considered all objections must be received in the Clerk's office within 14 days of the date of this recommendation.

By not objecting, parties may waive the right to appeal questions of fact. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

II. **Background:**

Michael Duncan, an inmate in the Arkansas Department of Correction ("ADC"), filed this case under 42 U.S.C. §1983, claiming that the Defendants violated his eighth amendment rights. Specifically, he alleges that he was required to clean the rims of

---

[1] The Clerk of Court is directed both to correct the spelling of Ms. Kelley's name and to add Mr. Duncan's ADC number to the docket.

urinals, without gloves, as a condition of participating in the ADC's Substance Abuse Treatment Program ("SATP") at the Randall L. Williams Unit. He says that he dropped out of the SATP rather than risk his health and, consequently, was denied early release. (Docket entry #2)

Mr. Duncan has filed an unsupported motion for summary judgment on the merits. (#26) The Defendants have responded. (#27) Defendants Kelley, Jackson, Corbin, and Lay ("Defendants") have also filed a motion for summary judgment on the merits. (#40) Mr. Duncan has responded to their motion. (#46)

### III.    Standard:

Summary judgment means that the court rules in favor of a party without the need for a trial. A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any fact important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).

### IV.    Facts Viewed in a Light Most Favorable to Mr. Duncan:

The SATP is a therapeutic residential treatment program at the ADC that runs for six to twelve months. (#42-1) Mr. Duncan voluntarily entered the SATP in June of 2017, after the parole board informed him that he would be released 12 months early if he completed the program. (#42-1; #46-2, p.2)

At the time of his enrollment, Mr. Duncan told Defendant Corbin that, according to a doctor, he was particularly susceptible to infections. (#42-2, p.12-14) In fact, he alleges, he had a "bloody fungus infection" on his hand at the time he enrolled. (#2, p.4)

Mr. Duncan admits there is no medical documentation stating that he is particularly susceptible to infections. (#42-2, p.12)

At enrollment, Mr. Duncan was provided an SATP handbook with program rules, and he agreed to follow those rules. (#42-1) In the SATP, inmates are assigned various daily jobs, including cleaning bathrooms and toilets, sweeping, mopping, and cleaning windows. (#42-2, p.4) SATP inmates are responsible for cleaning the barracks twice a day for 30 minutes in the morning and 30 minutes in the evening. (#42-2, p.4-6) During the 30-minute cleaning sessions, the inmates are provided cleaning supplies, including mops, buckets, spray bottles with cleaning solutions, toilet brushes, and rubber gloves. (#42-2, p.4-6) Inmates assigned to clean bathrooms are given gloves and a toilet brush. (#42-2, p.5-6)

Mr. Duncan takes issue with the SATP "rule" requiring inmates to wipe the rim of the urinal or toilet immediately after they urinate. For this job, inmates are not provided gloves. Rather, they use squares of newspaper that are stacked within reach of the urinals and toilets. (#2; #42-1; #42-2)

Mr. Duncan alleges that the bathrooms at the Unit are "the most nastiest bathrooms I've ever seen." (#42-2, p.6) He complains wiping the rim of a urinal forces him to "smear the urine of 50 men around the rim of urinals" without the protection of gloves. (#2) It is not clear from the record whether other inmates or only SATP inmates are allowed to use these bathrooms.

The requirement to wipe the toilet rim after each use is not an ADC requirement; instead, it is a rule set by the SATP inmates themselves. (#42-1) According to the SATP

3

handbook, inmates can be written up by other inmates "for not following up behind self." Inmates consider keeping toilet rims clean as a part of each inmate's duty to "follow up." (#42-1) Mr. Duncan alleges that some SATP inmates regularly watched other inmates urinate for the sole purpose of issuing write-ups for those who failed to "follow up" by cleaning the rim. (#2, p.4)

    Mr. Duncan showed Defendant Corbin a sample newspaper square, known colloquially as a "piss ticket," and Defendant Corbin allegedly responded, "Wow, I can't believe y'all are having to do that." (#42-2, p.8) In fact, Mr. Duncan says that went to Defendant Corbin three times in three days asking that he not be required to comply with the inmate-imposed rim-cleaning requirement. Defendant Corbin, however, did not intervene to change the rule. (#2, p.4)

Defendant Corbin does not dispute that inmates set up the requirement for cleaning toilet rims with newspaper squares, but notes that SATP staff members have the authority to override any write-ups issued by inmates. This override authority is set out in the client handbook. (#42-1, p.2) It is undisputed that Mr. Duncan never received an inmate-issued write-up for failing to wipe a toilet rim.

At one point during his 13-day stay in the program, Mr. Duncan wrote a letter to Warden Jackson objecting to the rim-cleaning requirement and asking the Warden for help. (#42-2, p.19-21) The Warden allegedly did not reply. (#2, p.4) Mr. Duncan testified that he does not have a copy of his letter to the Warden because it "disappeared, conveniently." (#42-2, p.19)

Mr. Duncan signed out of the SATP after 13 days because, he feared that he would contract a disease from cleaning toilet rims without gloves. (#2, #42-1) As a result of dropping out of the program, he was not eligible for early release. (#2, #42-1) After he had withdrawn from the program, Mr. Duncan wrote a grievance and a letter to Defendant Kelley requesting that she eliminate the requirement that inmates clean toilets and urinals with newspaper squares and allow him back in the program. (#2, p.4; #42-2, p.19-21) Defendant Lay received a copy of the letter (#42-2, p.19-21), but neither he nor Defendant Kelley responded. (#2, p.4)

Mr. Duncan concedes that he never asked for gloves to use when cleaning with a newspaper square. (#42-2) He also concedes that he did not suffer any physical injuries as a result of wiping toilets and urinals with newspaper squares. (#42-2, p.22)

**V.     Discussion:**

Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of alleged violation, their conduct violated a clearly established federal statutory or constitutional right that a reasonable person would have appreciated. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 734 (2011); *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

"It is not necessary, of course, that the very action in question has previously been held unlawful." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) (internal citations

omitted). In other words, "an officer might lose qualified immunity even if there is no reported case directly on point." *Id.* The question turns on whether, considering pre-existing law, "the unlawfulness of the officer's conduct [would have been] apparent." *Id.*

Under settled law, the Eighth Amendment "forbids knowingly compelling an inmate to perform labor that is . . . dangerous to his or her life or health. . . ." *Ambrose*, 474 F.3d at 1075 (citing *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998)). And, prison officials are deemed deliberately indifferent to an inmate's health and safety when they knowingly compel an inmate to perform such labor. *Kulkay v. Roy*, 847 F.3d 637, 643 (2017). That said, it takes a highly culpable state of mind to support a finding of deliberate indifference. *Id.* "The defendant-official's state of mind must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Id.* (internal citations omitted).

    A.    Defendant Corbin

At the time Mr. Duncan participated in the SATP, reasonable prison officials knew of their duty to provide inmates with humane conditions of confinement and to take reasonable measures to see that inmates were safe. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Without question, this includes protecting inmates from exposure to toxic substances. In *Fruit v. Norris*, 905 F.2d 1147 (8th Cir. 1990), the Court of Appeals held that Arkansas prison officials had violated an inmate's eighth amendment rights by requiring him to clean an underground raw-sewage tank without protective gear. And it noted that courts should be "especially cautious about condoning conditions that include an inmate's proximity to human waste." *Id.* at 1150. The court reasoned that "common

6

sense" should have alerted prison officials that unprotected contact with human waste could cause disease. In a later case, however, the Eighth Circuit distinguished *Fruit* and granted an officer qualified immunity in a case where the inmate was provided protective gear (including eyewear, gloves, and boots) that was deemed inadequate. *Good v. Olk-Long*, 71 F.3d 314, 316 (8th Cir. 1995).

Here, Mr. Duncan's complaint concerns an inmate-imposed rule that *could have* resulted in an *inmate* write-up. In fact, Mr. Duncan never received a write-up for failing to clean up after himself; and even if he had, ADC officers had the power to override any inmate-issued write-up. Had Mr. Duncan been disciplined for refusing to clean a toilet without gloves or other protection, that might lead to a different outcome; but based on the undisputed facts here, the Defendants did not violate Mr. Duncan's constitutional rights.

    B.    Defendant Jackson

Mr. Duncan alleges that he wrote to Defendant Jackson, Defendant Corbin's supervisor, to ask for his help in changing the inmate-imposed rule for cleaning toilet rims. His claims against Defendant Jackson fail for two reasons. First, even if Mr. Duncan's rights had been violated, Defendant Jackson could not be held liable based solely on the fact that he was Defendant Corbin's supervisor. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Of course, a supervisor may be held liable for failing to take corrective action in response to a known constitutional violation. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (quoting *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)); see also *Fruit*, 905 F.2d at 1151. Here, there was no proof that Mr. Duncan notified Defendant

7

Jackson.

Second, and more significantly, even if Mr. Duncan had produced the letter to Defendant Jackson asking for his help in eliminating the inmate-imposed rule, Defendant Jackson was not required to take corrective action. Defendant Corbin did not violate Mr. Duncan's rights; thus, Defendant Jackson was not required to act.

    C.    Defendants Kelley and Lay

Claims against Defendants Kelley and Lay fail for the same reasons that Defendant Jackson is not liable. Because Mr. Duncan's rights were not violated by Defendant Corbin's failure to nullify the inmate-imposed rule, Defendants Kelley and Lay were not obligated to step in. In any event, it is undisputed that Mr. Duncan notified Defendant Kelley and Lay about the rim-cleaning rule only *after* he had quit the program.

**VI.**    **Conclusion:**

The undisputed facts show no violation of Mr. Duncan's constitutional rights. Therefore, Defendants' motion for summary judgment (#40) should be GRANTED and claims against them should be dismissed, with prejudice. Mr. Duncan's motion for summary judgment (#26) should be DENIED, as moot.

DATED this 10th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE